UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES | : | |
| | : | Criminal No. Cr-05-246 (RMC) |
| *v.* | : | |
| | : | |
| PELES FRANCISCO | : | |

### DEFENDANT FRANCISCO'S MOTION TO SUPPRESS STATEMENTS AND TANGIBLE EVIDENCE AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEROF

Defendant Peles Francisco ("Francisco"), by and through undersigned counsel, and pursuant to the Fourth and Fifth Amendment to the Constitution and applicable caselaw, hereby respectfully moves the Court to suppress as evidence in this case any custodial statements allegedly made by Mr. Francisco and any tangible evidence obtained by the government subsequent to his arrest. As grounds for this motion, Mr. Francisco states as follows:

### FACTS

On August 2, 2005, agents of the United States Secret Service and Immigration and Custom Enforcement arrived at 754 Harvard Street, NW to arrest Mr. Francisco pursuant to a Superior Court bench warrant. The agents did not have a search warrant for the apartment. When the agents knocked on the door, Mr. Francisco answered and was immediately rushed by several agents who entered the home and began searching various rooms in the apartment. The agents arrested and handcuffed Mr. Francisco, who at the time was located in a front room of the apartment. With Mr. Francisco were his infant son and wife, who was also detained by the agents.

As the agents were searching various rooms of the apartment, an agent questioned Mr. Francisco and obtained statements from him regarding his immigration status and the

location of incriminating evidence. The agents did not advise Mr. Francisco of his rights until after they transported him to the Third District station for processing.

Additionally, the agents threatened to arrest his wife and place his infant son in state custody if he did not cooperate with them. As a result of this coercion, Mr. Francisco divulged the location of a revolver wrapped in clothing and located inside a closed of a rear bedroom closet. The agents also discovered equipment and material the government alleges is used to produce fraudulent identity documents.

**I.  GOVERNMENT AGENTS DID NOT HAVE A WARRANT TO SEARCH THE APARTMENT; AND THE SEARCH EXCEEDED THE SCOPE OF A VALID SEARCH INCIDENT TO ARREST**

Under Chimel v. California, 395 U.S. 752 (1969),[1] upon lawfully arresting a person the police may search the person and the area "within his immediate control" – i.e., the area from within which he might gain possession of a weapon or destructible evidence. See Id. at 763. "There is no comparable justification, however, for . . . searching any room other than that in which an arrest occurs-or, for that matter, for searching through all the desk drawers or other closed or concealed areas in that room itself. Such searches, in the absence of well-recognized exceptions, may be made only under the authority of a search warrant. The 'adherence to judicial processes' mandated by the Fourth Amendment requires no less." Id.

When the agents entered Mr. Francisco's home, they did not have a search warrant for the premises. Rather, they had a warrant for his arrest. They arrested Mr. Francisco

---

[1] The relevant facts of Chimel are essentially undisputed. "Late in the afternoon of September 13, 1965, three police officers arrived at the Santa Ana, California, home of the petitioner with a warrant authorizing his arrest for the burglary of a coin shop. The officers knocked on the door, identified themselves to the petitioner's wife, and asked if they might come inside. She ushered them into the house, where they waited 10 or 15 minutes until the petitioner returned home from work. When the petitioner entered the house, one of the officers handed him the arrest warrant and asked for permission to 'look around.' The petitioner objected, but was advised that 'on the basis of the lawful arrest,' the officers would nonetheless conduct a search. No search warrant had been issued." Id. at 753.

in the front room of the apartment and secured him in that room. Nevertheless, although he was arrested in that room, the agents fanned out throughout the apartment and began searching other rooms, including a rear bedroom, where they eventually found a weapon. Under Chimel, the search of other rooms was unlawful because other rooms of the apartment were not within Mr. Francisco's "immediate control" and he could in no manner gain possession of the weapon or destroy evidence, especially given the distance and the fact that Mr. Francisco was handcuffed and unable to move around. See also United States v. Wesley, 293 F.3d 541 (D.C. Cir. 2002).

## II. THE WARRANTLESS SEARCH WAS NOT A LAWFUL PROTECTIVE SWEEP[2]

In Maryland v. Buie, 494 U.S. 325 (1990), the Supreme Court held that the Fourth Amendment permits a properly limited "protective sweep" conducted incident to an in-home arrest on a warrant in order to protect the safety of police officers or others. The Court emphasized that a "'protective sweep' is a quick and limited search of premises, . . . narrowly confined to a cursory visual inspection of those places in which a person might be hiding." Id. at 327. The test for the propriety of such a protective sweep is whether "the searching officer 'possesse[d] a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warrant[ed]' the officer in believing,' [citations omitted] that the area swept harbored an individual posing a danger to the officer or others." Id.

In United States v. Ford, 56 F.3d 265 (D.C. Cir. 1995), as in Buie and in this case, the police made a warrantless search of the home in which they were executing an arrest warrant. Our Court of Appeals, building on the Buie analysis, concluded that the officers lacked

---

[2] [2] In the interest of full-disclosure to the Court, and in an effort to conserve expenditure of time, this motion has borrowed heavily and liberally from the Memorandum Opinion by Judge Kessler in United States v. Pixley, 7 F. Supp.2d 52 (D.D.C. 1998).

3

articulable facts to support a belief that the bedroom, in which a gun clip was found after the arrest, harbored someone posing a danger to officers on the scene. Id. at 265.

Ford and Buie both identified two different types of protective sweeps. The first "requires no probable cause or reasonable suspicion," Ford, 56 F.3d at 268, and involves a "very circumscribed . . . 'look in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched' ", Ford, 56 F.3d at 268, (quoting Buie, 494 U.S. at 334). The second requires, as already noted, "articulable facts which, taken together with the rational inferences from those facts, would warrant a reasonably prudent officer in believing that the area to be swept harbors an individual posing a danger to those on the arrest scene.' " Ford, 56 F.3d at 269 (quoting Buie, 494 U.S. at 334). This second type of sweep, which is "aimed at protecting the arresting officers, if justified by the circumstances, is nevertheless not a full search of the premises, but may extend only to a cursory inspection of those spaces where a person may be found.' " Id.

As to Mr. Francisco himself, the protective sweep in this case cannot involve the first type of Buie sweep, for which neither probable cause nor reasonable suspicion is required, since it did not involve "look[ing] in closets and other spaces immediately adjoining the place of arrest from which an attack could be immediately launched." Buie, 494 U.S. at 334. Rather, a rear bedroom was searched while Mr. Francisco and his wife were fully restrained in the front room of the apartment; obviously the search was not of "spaces immediately adjoining the place of arrest."

The protective sweep, was therefore clearly the second type of Buie sweep. In Ford, the Court of Appeals rejected the argument that the arresting officers' knowledge of Ford's prior arrests and the current warrant for a homicide justified their assumption that he was armed

and dangerous. In this case, Mr. Francisco does not have prior convictions, and his arrest warrant was for a misdemeanor D.C. Code offense. Moreover, in the present case, as in <u>Ford</u>, the significant fact is that "when [the arresting officers] began [their] sweep, appellant had already been arrested and placed in the custody of the police officers." <u>Ford</u>, 56 F.3d at 269. Here, both Mr. Francisco and his wide had been handcuffed and fully secured-without any resistance, denial of identity, or attempt to flee-before the agents moved on to search the rear bedroom. As the Court of Appeals noted in another recent protective search case, "[o]nce appellant was in custody, he no longer posed a threat to the police." <u>United States v. Henry</u>, 48 F.3d 1282, 1284 (D.C. Cir.1995).

### III. MR. FRANCISCO'S CONSENT, IF GIVEN, WAS NOT KNOWING AND VOLUNTARY

Consent does away with the Fourth Amendment's warrant requirement. With valid consent, the police may search one's home, person or possessions without a warrant and without probable cause. See <u>Schneckloth v. Bustamonte</u>, 412 U.S. 218, 219 (1973). However, when the government relies upon a claim of consent, the government bears the burden of proving that the consent was voluntarily given; that the person consenting was one with authority to consent; and that the actual search did not exceed the scope of the consent given. See <u>Bumper v. North Carolina</u>, 391 U.S. 543 (1968).

In this case, after arresting Mr. Francisco and detaining his wife, the agents threatened to arrest his wife and place their infant in state custody if Mr. Francisco did not cooperate with the agents and give them the information they wanted. Not wanting to have his wife arrested and his infant taken from him, Mr. Francisco told the police where the revolver was located but never consented to a search of the entire apartment. Thus, his "consent" to seize the revolver was not voluntarily given and the search effected by the agents exceeded the scope of

5

the purported consent to relating to the revolver.

### IV.    MR. FRANCISCO'S STATEMENTS WERE OBTAINED IN VIOLATION OF MIRANDA AND WERE NOT KNOWINGLY AND VOLUNTARILY MADE.

Before law enforcement officers may question an individual who is in custody, they must warn the individual of his Constitutional rights. See Miranda v. Arizona, 384 U.S. 436, 478-79 (1966). Once a defendant challenges the admissibility of any statements made while in custody, the government must prove that the defendant was advised of and understood the Miranda rights and that he or she validly waived those rights. If the government cannot establish both the warning and the waiver by a preponderance of the evidence, the statements must be suppressed. See Colorado v. Connelly, 479 U.S. 157, 168-69 (1986).

A valid waiver of Miranda rights must be knowing, voluntary, and intelligent. See Miranda, 384 U.S. at 444. The inquiry into the validity of a waiver of Miranda rights "has two distinct dimensions." Colorado v. Spring, 479 U.S. 564, 572 (1987) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The waiver must be "the product of a free and deliberate choice rather than intimidation, coercion, or deception," and "must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Spring, 479 U.S. at 572 (quoting Fare v. Michael C., 442 U.S. 707, 725, (1979)).

The Court must "consider the totality of circumstances surrounding [defendant's] statement and determine if that statement was the result of a knowing, voluntary, and intelligent waiver of the protections implicit in the Miranda warnings." United States v. Tyler, 164 F.3d 150, 158 (3d Cir. 1998). Such circumstances vary according to the facts of the particular case, including the background, experience, and conduct of the suspect, see Oregon v. Bradshaw, 462 U.S. 1039, 1046 (1983), as well as any indicia of coercion.

6

  **a.** <u>**the waiver was not knowing**</u>

  When law enforcement agents entered Mr. Francisco's home to arrest him on the Superior Court bench warrant they immediately seized, handcuffed and searched his person. At no time did they inform him of his rights under <u>Miranda</u>. Nevertheless, the agents questioned him and obtained incriminating information from him. Mr. Francisco is a foreign national unfamiliar with the American criminal justice system. In fact, he comes from a country (Mexico) where the police routinely extract confessions from suspects and where American-style rights are not the norm. Merely because he responded to the agents' questioning under compulsion did not mean that he had "a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." It is clear that the agents failed to advise him of his <u>Miranda</u> rights until he was taken to be processed at a police station.

  **b.** <u>**the waiver was not voluntary**</u>

  The Court must determine the voluntariness of a confession by looking at the totality of the circumstances to decide whether it was coerced or the product of a rational intellect and a free will. <u>See</u> <u>Withrow v. Williams</u>, 507 U.S. 680, 693 (1993). As described in part a, above, the facts indicate that Mr. Francisco was arrested, threatened and coerced by the agents into answering questions and providing information without ever having been advised of his rights and under the duress of threats of having his wife arrested and his child taken from him. There is no evidence that he understood he had those rights and voluntarily relinquished them.

7

**WHEREFORE**, for the foregoing reasons and others that may become apparent to the Court, Mr. Francisco respectfully requests that this motion be **GRANTED**.

Dated: Washington, DC
August 22, 2006

Respectfully submitted,

**LAW OFFICE OF A. EDUARDO BALAREZO**

_____
A. Eduardo Balarezo (Bar No. 462659)
400 Fifth Street, N.W.
Suite 300
Washington, D.C. 20001
(202) 639-0999 (tel)
(202) 783-5407 (fax)
*Attorney for Peles Francisco*

**CERTIFICATE OF SERVICE**

      I HEREBY CERTIFY that on this 22nd day of August, I caused a true and correct copy of the foregoing Defendant Francisco's Motion to Suppress Statements and Tangible Evidence and Memorandum of Points and Authorities in Support Thereof to be delivered to the parties in this case via Electronic Case filing.

                                                                              _____
                                                                               A. Eduardo Balarezo