UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES : | |
| : | Case No. 05-CR-246(03) (RMC) |
| v. : | |
| : | |
| PELES FRANCISCO : | |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Defendant Peles Francisco ("Francisco"), by and through undersigned counsel, respectfully submits the following Memorandum in Aid of Sentencing. Mr. Francisco will come before the Court on December 8, 2006, for sentencing after having entered a plea of guilty to one count of Aggravated Identity Theft in violation of 18 U.S.C. § 1028A and one count of Possession of a Firearm by and Illegal Alien in violation of 18 U.S.C. § 922(g)(5)(A) and 924(a)(2).

**I.   OBJECTIONS TO THE PRESENTENCE REPORT**

Mr. Francisco and undersigned counsel have reviewed the Pre-Sentence Investigation Report ("PSR") prepared by United States Probation Officer Renee Moses Gregory and Mr. Francisco does not object to the contents of the PSR.

**II.   SENTENCING GUIDELINES APPLICATION**

Mr. Francisco does not object to the Sentencing Guidelines computation contained in the PSR.

**III.   EFFECT OF UNITED STATES v. BOOKER ON SENTENCING**

In <u>United States v. Booker</u>, 125 S. Ct. 738 (2005), the Supreme Court held that its prior decisions in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004), and <u>Apprendi v. New Jersey</u>, 530 U.S. 466, 477 (2000), apply to the United States Sentencing Guidelines. Thus, the Sixth

Amendment will be violated by the imposition of an enhanced sentence under the Guidelines based on a sentencing judge's determination of a fact, other than a prior conviction, that was not found by a jury or admitted by the defendant. Id. at 756. As a result, the Court then severed the portions of the federal sentencing statute that makes it mandatory, thus rendering the guidelines advisory. Id. at 757. See also United States v. Simpson, 430 F.3d 1177, 1182 (D.C. Cir. 2005).

The Court also excised the provision setting forth appellate standards of review, 18 U.S.C. § 3742, and held that sentences should be reviewed under a "reasonableness" standard, to be determined with reference to the standards set forth in 18 U.S.C. § 3553(a). See Booker, 125 S. Ct. at 757, 765-66. Because a district court's sentence is now reviewable for "reasonableness," and can be reversed if found unreasonable, the "upper limit of a lawful sentence is no longer the maximum term of imprisonment under the relevant statute, but rather the highest point within that range that is reasonable." United States v. Huerta-Rodriguez, 355 F. Supp.2d 1019, 1023 (D. Neb. 2005), aff'd 2005WL3440785 (9th Cir. 2005) (quoting Booker, 125 S. Ct. at 748-49, 754-56 (referring to upper limit as "maximum authorized by the facts established" by guilty plea or jury verdict)).

Post-Booker, although a district court must still consider the Guidelines, it must also still consider the other directives of 18 U.S.C. § 3553(a). See Simpson, 430 F.3d at 1182. Under Booker, courts must treat the Guidelines as just one of a number of sentencing factors. Accordingly, a sentencing court is not bound by the Guidelines, but must "consult" them and "take them into account when sentencing." Booker, 125 S. Ct. at 767.

In Booker, the Supreme Court neither held, nor implied, that the measure of reasonableness was the Guideline sentencing range. See Huerta-Rodriguez, 355 F. Supp.2d at 1023. Thus, "'any system which [holds] it *per se* unreasonable (and hence reversible) for a

2

sentencing judge to reject the Guidelines is indistinguishable from the mandatory system' that the Supreme Court found unconstitutional." Id. (quoting Booker, 125 S. Ct. at 794 (Scalia, J., dissenting)). As a result, a sentencing court should be guided by the consideration of the now-advisory Guidelines along with the statutory factors set forth in 18 U.S.C. § 3553(a). "The directives of Booker, and § 3553(a) make clear that courts may no longer uncritically apply the guidelines and, as one court suggested, 'only depart . . . in unusual cases for clearly identified and persuasive reasons.'" United States v. Ranum, 353 F. Supp.2d 984, 985 (E.D. Wisc. 2005) (quoting United States v. Wilson, 350 F. Supp.2d 910, 912 (D. Utah 2005)).

### IV.   OFFENSE CONDUCT

Mr. Francisco agreed to the factual proffer that stated in sum that he was a member of an organized group of individuals who conspired together to manufacture, possess and sell illegal identity documents.

#### A.   Aggravated Identity Theft

Mr. Francisco has acknowledged that at the time of his arrest he was in possession of two alien registration cards and one social security card that were subsequently determined by the government to be the means of identification of a real person, without lawful authority to possess that information. Nevertheless, Mr. Francisco maintains that he never was actually aware that they were the means of identification of a real person.

#### B.   Possession of a Firearm by an Illegal Alien

Mr. Francisco also readily acknowledged that he possessed a firearm in his residence at the time of his arrest and maintains that he possessed the firearm for protection in a rough neighborhood. Although under the Guidelines there is a 4-level increase because he possessed the weapon in connection to another felony offense (aggravated identity theft), there is

3

no evidence that Mr. Francisco ever actually used the weapon while he was engaged in the offense to which he has pleaded guilty.

  V.  **SECTION 3553(a) FACTORS**

When determining a particular sentence to be imposed, 18 U.S.C. § 3553(a) requires courts to consider in relevant part: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing ranges established; (5) pertinent policy statements; (6) the need to avoid sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.

  1.  **Nature and circumstances of the offense and history and characteristics of the defendant**

Mr. Francisco is guilty of participating in a conspiracy that sold illegal identity documents in the District of Columbia and elsewhere. Nothing more. Nothing less. Discovery in this case indicated that the overwhelming majority of his customers were other Hispanics who used these documents merely to be able to work. There is no evidence that Mr. Francisco manufactured or sold documents to anyone who in turn used the documents to commit any other crimes.

Mr. Francisco acknowledges that he entered the United States without legal authority and he has agreed to be deported upon serving his sentence. He came to the United States in search of better opportunities than were available to him in his impoverished home town in Mexico. When he arrived here he worked menial jobs trying to earn enough money to send home to help support his family in Mexico and also to support his family here. In fact, at the time of his arrest, he was living with his common law spouse, Belen Magana Pimentel, and

4

their infant son. He did not earn enough in these menial jobs and unfortunately turned to selling documents because it provided more income. However, as a result of his arrest and Belen's deportation, Mr. Francisco has now lost contact with her and fears he may never again see his little boy, Joshua, age two.

Mr. Francisco began using alcohol at the age of 13 or 14, and has dabbled in marijuana and cocaine use. Although he does not believe he is addicted to any narcotic, he does acknowledge that he would benefit from a treatment program.

### 2. Need for the sentence imposed

In addition to considering the above factors, the Court is required to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." 18 U.S.C. § 3553(a). Section 3553(a)(2) states that such purposes are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

### A. Seriousness of the offense, respect for the law, just punishment

The charge of Aggravated Identity Theft carries a <u>mandatory</u> two-year sentence that must be consecutive to any other sentence. Thus, Congress clearly took into account the seriousness of the crime. Additionally, Mr. Francisco is facing additional time for the second count to which he pleaded guilty.

Although Mr. Francisco committed a crime, he demonstrated his respect for the law and the legal process by agreeing to plead guilty and accept responsibility. In fact, he agreed

5

to plead guilty to the Aggravated Identity Theft count even though he had no knowledge that the documents found in his possession contained a social security number that belonged to another person. As the Court is probable aware, when these documents are made by the mills, the numbers are made up. It just so happened that this time they made up a real number. Thus, there was no intent on the part of Mr. Francisco to use those real means of identification to commit further crimes such as identity fraud. Because the relevant statute is fairly new, there is conflicting caselaw about whether the government had to prove that a defendant knew that the identification at issue belonged to another person or whether mere knowing possession was sufficient. Nevertheless, Mr. Francisco accepted the Court's ruling on the motion to dismiss that count and has agreed not to further litigate the issue.

Finally, Mr. Francisco has used the time he has been incarcerated to further and better himself. He has completed the 12-week substance abuse education course; the ARISE Life Management Skills course (violence and conflict); participated in the Clinica del Pueblo Educational Treatment program for clients with alcohol and substance abuse; and participated in math and English classes. *See* Exhibit 1.

Thus, as sentence as recommended in Section VII will promote adequately address the seriousness of the charge and promote Mr. Francisco's respect for the law.

### B & C.     Deterrence to criminal conduct and protection from further crimes

As the Court is aware, Mr. Francisco has already been held in this case for over one year and is facing at least a mandatory two year sentence. Never before having been incarcerated for such period of time, Mr. Francisco realizes that a criminal lifestyle is not something he wants to continue. Rather, he wants to return home and find and provide for his

6

family. Mr. Francisco assures the Court that once his sentence is complete and he is deported, he has no plans to ever return to this country.

### D. Provide treatment and training

The PSR indicates that Mr. Francisco is good health and has never been treated for mental health or drug problems. It appears from his history that Mr. Francisco does not have a serious drug problem, but that he could benefit from additional treatment and counseling during his incarceration. A maximum prison sentence will not serve to rehabilitate Mr. Francisco in a manner that cannot be addressed with the imposition of a lesser sentence.

### 3 & 4. Kinds of sentences available and the sentencing ranges established

The charge of Aggravated Identity Theft carries a mandatory sentence of two years consecutive to other sentences. For the count of Possession of a Firearm by an Illegal Alien, Mr. Francisco is facing a maximum statutory sentence of ten years, and a Guideline Sentence of eighteen to twenty-four months. Mr. Francisco is not eligible for probation.

### 5. Pertinent policy statement

There are no pertinent policy statements that Mr. Francisco can invoke.

### 6. Need to avoid sentencing disparities

Mr. Francisco' co-defendants had pled guilty to various charges and some have been sentenced. Upon a review of the ECF docket, it appears that the codefendants were sentenced as follows: a) Remigio Gonzalez-Olvera (conspiracy; 18 months); Pedro Hernandez-Colon (conspiracy; 18 months); Oscar Aguilar-Gomez (conspiracy; 21 months); Raymundo Lopez-Vargaz (conspiracy and illegal reentry; 16 months on each count to be served concurrently). In effect, all the codefendants were involved in the same type of activity and have been sentenced in the 16 month to 21 month range. By an act of fate, Mr. Francisco is guilty of

Aggravated Identity Theft, which carries a <u>mandatory</u> 24 month sentence, plus additional penalties for the weapons count.

### 7. Need to provide restitution

Here, restitution is not an issue and there is no specific victim who incurred financial loss or suffered physical harm relating to Mr. Francisco's offense conduct.

## VI. OTHER FACTORS

Mr. Francisco' status as a deportable alien may warrant a downward departure from the guidelines. The United States Bureau of Prisons is authorized by statute[1] to assure that an inmate must be afforded a reasonable opportunity to adjust to, and prepare for, re-entry into the community. However, in <u>Lartey v. Department of Justice</u>, 790 F. Supp 130 (W.D. La. 1992), the court determined that the right to participate in pre-release programs only applied to prisoners that were being released into the community within the United States, thereby excluding deportable aliens. In <u>United States v. Smith</u>, 27 F.3d 649 (D.C. 1994), the District of Columbia Court of Appeals ruled that a downward departure may be appropriate where the defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence. Thus, Mr. Francisco is eligible for a downward departure of at least ten percent of his sentence for the weapons possession as a result of his status as a deportable alien.

---

[1] <u>See</u> 18 U.S.C. § 3624(c), which directs the Bureau of Prisons, to the extent practicable, to assure that prisoners spend part of the last 10% of their sentences (but no more than six months) under conditions -- possibly including home confinement -- that will "afford the prisoner a reasonable opportunity to adjust to and prepare for his re-entry into the community." Bureau of Prisons regulations bar non-U.S. citizens from assignment to a Community Corrections Center except in what appear to be rare circumstances. <u>See</u> Federal Bureau of Prisons, Program Statement 5100.04: Security Designation and Custody Classification Manual, Ch. 2-9 (June 15, 1992).

VII.   **RECOMMENDATION**

In this case, the Court must impose a consecutive term of imprisonment of two years on the Aggravated Identity Theft count.  Were the Court to impose a guideline sentence for the Possession of a Firearm count, Mr. Francisco' sentence would be mush harsher than that of his co-defendants.  Because any sentence on the Possession count must be consecutive to the other count, Mr. Francisco respectfully recommends that the Court sentence him to two years for Aggravated Identity Theft and to one day for Possession of Fraudulent Identification Documents, consecutive to each other.  In this manner, his sentence will be longer that that of his codefendants and it will acknowledge is arguably more culpable role in the conspiracy.  If the Court is inclined to impose a longer sentence on the Possession count, Mr. Francisco requests that the Court grant a downward departure pursuant to <u>Smith</u>.

Dated: Washington, DC
       December 5, 2006                    Respectfully submitted,

                                           **LAW OFFICE OF A. EDUARDO BALAREZO**


                                           By: _____
                                             A. Eduardo Balarezo (Bar # 462659)
                                             400 Fifth Street, NW
                                             Suite 300
                                             Washington, DC  20001
                                             (202) 639-0999

                                           *Counsel for Peles Francisco*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 5th day of April 2006, I caused a true and correct copy of the foregoing Defendant's Memorandum in Aid of Sentencing to be delivered via Electronic Case Filing to:

>Frederick Yette, Esq.
>Assistant United States Attorney
>Office of the United States Attorney for the District of Columbia
>555 Fourth Street, N.W.
>Washington, DC 20001

_____
A. Eduardo Balarezo